Harry SILVERMAN, Appellant,

v.

Esther SILVERMAN, Appellee.

No. 2617.

Municipal Court of Appeals for the District of Columbia.

Argued July 11, 1960.

Decided July 29, 1960.

---

1. Cf. Farrington v. Farrington, D.C.Mun.App., 140 A.2d 921.

Samuel Intrater, Washington, D. C., with whom Albert Brick, Washington, D. C., was on the brief, for appellant.

No appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

■ This is an appeal from a final judgment dismissing appellant's uncontested suit for absolute divorce on the grounds of desertion. While several errors are alleged, we will deal with only two of them. The first relates to the refusal of the trial judge to grant a divorce based upon uncontradicted testimony. After considering the entire record, we hold that there is no merit to this contention.

The other error alleging personal bias and prejudice on the part of the trial judge, gives us concern. While we do not think it would serve any useful purpose to set forth in detail the colloquy between the trial judge, appellant and his counsel, the dissenting opinion, by its reference to certain portions thereof, requires that full clarification be provided by quoting the remarks in context.[1]

■■ It goes without saying that every judge should exercise self-restraint and preserve an atmosphere of impartiality. As the United States Court of Appeals for this circuit stated: "Mild expressions of feeling are as hard to avoid as the feeling itself. But a right to be tried by a judge who is reasonably free from bias is a part of the fundamental right to a fair trial."[2] We have no alternative but to reverse and remand the case for a new trial. This is indeed unfortunate because the result, absent bias, was probably correct.

Reversed with instructions to grant a new trial.

HOOD, Associate Judge (dissenting).

A careful reading of the record in this case fails to convince me that there was such bias or prejudice on the part of the trial judge as requires or justifies a reversal. The record does show irritation and exasperation on the part of the trial court resulting from appellant's refusal or inability to give a direct answer to almost any question; and that the trial court indulged in some vigorous and intemperate language in dealing with the situation. Remarks of the trial court such as are set forth in the margin[3] could well have been expressed in milder and more judicious language; but at the most they indicate the court's dissatisfaction with an unsatisfactory witness, and, in my opinion, do not indicate a personal bias or prejudice which would pre-

1. See attached appendix.

2. Whitaker v. McLean, 1941, 73 App.D.C. 259, 118 F.2d 596.

3. "Pay attention to what is asked you. I don't blame your wife for your wife leaving you if you talk like that.

\* \* \* \* \*

"Don't go shooting your mouth off about something that's not asked you.

\* \* \* \* \*

"That is probably the reason she hit you on the head, you talk too much."

vent a fair appraisal of the witness's testimony.

The record also shows that at the conclusion of the trial the court told appellant's counsel: "I don't want you to ask me any more questions. Take it to the Court of Appeals. Before I am going to hold you in contempt, sit down and shut up!" This language was unbecoming to one holding judicial office, but it was not entirely unprovoked. After the evidence was completed and the judge had announced that he did not believe appellant and would not grant a divorce, appellant's counsel inquired as to the findings of the court. The judge replied that he found appellant had lied when he testified that his wife deserted him. Counsel persisted in asking what facts the court had found (I do not see how a judge can make findings of fact on the testimony of a witness he finds unworthy of belief), and it was only after counsel had five times repeated his request for findings that the court made the statement above quoted. Conceding that the court's language was unduly harsh, I cannot see that it affected the merits of the case or that it requires a new trial.

I would like to make it plain that I do not condone discourtesy or rudeness by a judge towards either lawyers or litigants. The judge has the right to expect courteous and respectful treatment from lawyers and litigants, and in turn the judge is under obligation to accord them the same treatment. However, in this case the record does not convince me there was error requiring a new trial.

Turning to the merits of the case, I think the record clearly shows that appellant's claim that his wife deserted him on April 16, 1956, was wholly unsupported. In a previous action filed by him on June 21, 1956, he claimed that he and his wife had voluntarily lived separate and apart for five years preceding the filing of that action. If what he claimed in the prior suit was true, then certainly his claim in this action was false. Furthermore, he admit-

ted that he and she sold their jointly owned property on the very day he claimed she deserted him. The only logical conclusion which could be drawn from appellant's vague, rambling and indefinite testimony was that he and his wife voluntarily separated on or about April 16, 1956. He thus proved neither a two-year desertion nor a five-year voluntary separation, and he was not entitled to a divorce. I would affirm.

## Appendix

Transcript, Page 6:

"Q. Did you support your wife while you were there together? A. Support my wife? I am on disability for twelve years. I have a letter from my doctor—

"The Court: She didn't ask you that—

"Witness: Excuse me—

"The Court: Pay attention to what is asked you. I don't blame your wife for your wife leaving you if you talk like that."

Transcript, Page 8:

"Q. * * * Did you not file that on June 21, 1956? A. That's right.

"Q. After this alleged desertion of April the 16th, 1956? A. Never cared to go back—

"The Court: She didn't ask you that. Why don't you pay attention to what's asked you? She asked you if you filed that paper in Court.

"Witness: Yes, I did file that paper in Court.

"The Court: Well, why didn't you say that in the first place?

"Witness: I misunderstood—

"The Court: Don't go shooting your mouth off about something that's not asked you."

Transcript, Page 9:

"Witness: At that time she hit me on the head—

"By the Court: Don't go talking so much!

"Mr. Intrater: Don't say a thing—

"By the Court: That is probably the reason she hit you on the head, you talk too much."

Transcript, Page 14:

"Q. After the house was sold, and if she wanted to live with you, where would she have lived with you? A. She didn't want me any more. She said, 'I never loved you—'

"By the Court: Pay attention to what is asked you—

"Witness: I was—

"By the Court: The trouble with you, you don't have any idea of the question that is asked you. You just answer anything that comes into your mind, apparently."

Transcript, Page 15:

"Q. Well, for how long a period of time have you been under disability? A. Disability. I got a letter here from the doctor—

"By the Court: The question, Mr. Silverman, is: How long have you been under disability? A. Going on twelve years. Since 1948.

"By the Court: What is your disability, mental or physical?

"Witness: It is a disability I got right on the job—

"By the Court: Is something wrong with your mind or body?

"Witness: Here is the letter from the doctor.

"By the Court: I don't want to see the letter from the doctor. What is the matter with you?

"Witness: I got hurt on the job, I fell down.

"By the Court: "Did you fall on your head?

"Witness: I fell on my back as the letter will tell you."

Transcript, Page 17:

"By the Court: Did you try to get in touch with her?

"Witness: No use trying because she told me the very last day, she said, she—

"By the Court: I didn't ask you that, did I?

"Witness: No use trying because she don't care for me—

"By the Court: Well, I don't blame her for that  *  *  *."